**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**CHUNDRA ADAMS,**
**Parent and next friend of T.J.,**

**Plaintiff,**

v.

**DISTRICT OF COLUMBIA,**

**Defendant.**

**Civil Action No. 17-1816 (JEB)**

**MEMORANDUM OPINION**

Plaintiff Chundra Adams, acting on behalf of her child T.J., brought this action alleging that the District of Columbia is violating the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, by failing to provide her son a free and appropriate public education. She now seeks a preliminary injunction requiring his placement at a private school. Magistrate Judge Deborah A. Robinson, having been referred the case, has issued a Report and Recommendation to deny the Motion, largely for lack of irreparable harm. Finding alternatively that Adams does not have the requisite likelihood of success on the merits for an injunction to issue, the Court will adopt the Report's conclusion and deny the Motion.

**I.     Background**

The Court will not reiterate the full factual background of the case, which is set out in detail in the 35-page hearing officer determination (HOD) and the Report and Recommendation. In short, T.J. is a minor child currently enrolled in the 6th grade in the District of Columbia Public School system. See ECF No. 1 (Complaint), ¶ 7. He is eligible for special education and related services as a student with Attention Deficit Hyperactivity Disorder and Emotional

1

Disturbance, and his reading and math skills are significantly below grade level.  Id., ¶ 9; ECF

No. 1-4 (Interim HOD) at 24.  In 2015, T.J.'s Individualized Education Program required two

hours per day of specialized instruction outside general education and one hour per day within

general education, with 120 minutes per month of Behavioral Support Services.  See Compl., ¶

11.  In March 2016, the IEP was increased to four hours a day of special education, with 120

minutes per month of Behavioral Support.  Id., ¶ 27.  After T.J. underwent a series of

psychological and behavioral assessments in early 2017, his IEP team was reconvened on March

16.  Determining that he required additional support, the team bumped up his Specialized

Instruction Services to 20 hours per week, including 15 hours outside general education, and

increased his Behavior Support to 240 minutes per month.  Id., ¶ 44.  The District later

determined, however, that in order for T.J. to have this level of special education, all 20 hours of

his Specialized Instruction would have to be outside general education.  See Interim HOD at 17.

On May 23, 2017, the Special Education Manager for DCPS circulated a proposed revised IEP

reflecting this change and suggested holding an IEP meeting to finalize a plan providing for 20

hours outside general education and placement in a Behavior and Education Support (BES)

classroom.  See AR 338-354.  Plaintiff, however, declined to participate in the May IEP meeting.

On June 30, DCPS sent Adams a location-of-services letter for the 2017-18 school year

informing her that T.J. would be placed in a BES classroom at Kramer Middle School.  See AR

163.

On May 15, however, prior to the circulation of the revised IEP and proposed BES

placement, Plaintiff filed a Due Process Complaint naming DCPS as respondent.  See AR 05-21.

The Complaint alleged that T.J.'s 2015, 2016, and 2017 IEPs and placements denied him a free

and appropriate public education (FAPE) and requested that the Hearing Officer "[o]rder DCPS

to fund the student's tuition and transportation at a non-public school of the parent's choosing."

AR 18.  Plaintiff later identified her chosen private school as the Phillips School, which is a

private special-education day school located in Maryland with an annual tuition of approximately

$49,000.  See ECF 12-1 (Administrative Hearing Transcript) at 94:22.  It enrolls only students

with IDEA disabilities and implements a school-wide behavior system to accommodate those

students with emotional and behavioral challenges.  Id. at 113:12-15.  Phillips currently holds a

Certificate of Approval from the State Superintendent of Education, and it enrolls a number of

students from DCPS.  Id. at 93:2; 95:12-14.  T.J. has been accepted for admission for the 2017-

18 school year and would, at this point, still be able to attend Phillips for the remainder of the

term.  Id. at 106:10-11.

On August 2-3, the parties participated in an administrative hearing before Hearing

Officer Peter B. Vaden.  See Interim HOD at 1.  Plaintiff called as witnesses T.J's educational

advocate, Dr. Ida Holman, who offered testimony as to his educational needs and past IEPs, as

well as Laura Green from the Lindamood-Bell Reading Center, who testified as to the Center's

reading program, and Sarah Headley, the Program Director at Phillips School, who discussed the

offerings at Phillips and the school's ability to serve T.J.'s disabilities.  See Compl., ¶ 61.  DCPS

called Tina Allen, a school social worker, who testified as to T.J.'s prior IEPs and the

educational impacts of his disabilities; Dr. Jamie Wyche, the Special Education Manager from

Aiton Elementary School, where T.J. had been previously placed; and Jacqueline Walters, the

Assistant Principal of Kramer Middle School, who testified as to the special-education programs

available at Kramer.  Id., ¶ 62  Over the course of the two-day hearing, Officer Vaden heard

testimony from both sides on T.J.'s educational and behavioral impairments, the respective

special-education offerings of Phillips School and DCPS, and the alleged prior deprivations of FAPE.

On August 18, the Hearing Officer issued his determination, finding that DCPS had violated IDEA by denying T.J. his right to a FAPE. Specifically, Officer Vaden concluded that: (1) DCPS's delay of one year in conducting an updated Functional Behavioral Assessment (FBA) impeded T.J.'s access to a FAPE; (2) DCPS denied T.J. a FAPE by providing him with an inappropriate IEP on March 22, 2016; (3) DCPS denied T.J. a FAPE by providing him with an inappropriate IEP on March 16, 2017; and (4) Plaintiff did not, however, demonstrate that DCPS could not provide a special-education placement capable of meeting T.J.'s needs.

Turning to the appropriate remedies for DCPS's violations, the Hearing Officer found that the "evidence [did] not establish that no suitable public school is available for Student." Interim HOD at 31. He therefore declined to order DCPS to fund T.J.'s private-school placement and instead directed the District to convene T.J.'s IEP team within 15 business days of his decision to "review and revise, as appropriate, Student's IEP, in accordance [with] this decision" and to, within five days of the IEP revision, "identify to the parent a suitable school location to implement the revised IEP." Id. Finally, Officer Vaden found that T.J. was entitled to an award of compensatory education to remedy his prior denials of FAPE. On September 7, the parties held the IEP meeting ordered in the Interim HOD, see ECF No. 4-3 (Holman Affidavit), ¶ 8, where they agreed upon T.J.'s enrollment in the 20-hour/BES program as a "stay put" placement. See ECF No. 18 (Objections) at 3 (stating that 20-hour/BES IEP proposed by DCPS in May 2017 is "the same one that student has now"). On September 12, 2017, after continuing the final decision date to allow for additional evidence on the compensatory-education award, the Hearing Officer ordered that DCPS fund 400 hours of individual reading

instruction, as well as 75 hours of mentoring services by a social worker or counselor in order to compensate for the denials of FAPE identified in the Interim HOD. See ECF No. 8-1 (Final HOD) at 6.

Subsequent to Officer Vaden's determination on the merits – *i.e.*, the Interim HOD – Plaintiff filed this action on September 5. Adams's Complaint alleged that the Hearing Officer erred in the following ways: (1) by not "ruling separately on the placement claim"; (2) by invalidating the March 2017 IEP on procedural grounds and failing to "consider any of the substantive allegations made by the parent"; (3) by failing to address Plaintiff's assertion that delegation to the LRE team impeded Adams's participation in the placement decision; and (4) by finding that Plaintiff did not meet her burden of proving that there was no appropriate public-school option for T.J. See Compl., ¶¶ 101-139. As relief for these alleged errors, Plaintiff requested that the Court grant both declaratory and injunctive relief, including issuing an Order requiring DCPS to fund T.J.'s tuition at and transportation to the Phillips School. Id. at 33-34.

The case was then referred to Magistrate Judge Robinson for full case management. See ECF No. 3 (Referral Order). Three days after filing her Complaint, Plaintiff filed a Motion for a Preliminary Injunction, requesting that the Court place T.J. at the Phillips School. See ECF No. 4 (Emergency Motion for Preliminary Injunction). On November 8, 2017, Magistrate Judge Robinson issued a Report and Recommendation to deny Plaintiff's request for emergency relief, finding that Adams could not demonstrate irreparable harm. See ECF No. 17 (Report and Recommendation). Adams timely filed her Objections to the Report on November 20, and DCPS responded on December 4. See ECF Nos. 18 (Objections); 20 (DCPS Response). On January 9, 2018, this Court held oral argument on the Motion.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered her recommended disposition, a party may file specific written objections.  The district court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); <u>see, e.g.</u>, <u>Winston & Strawn LLP v. FDIC</u>, 841 F. Supp. 2d 225, 228 (D.D.C. 2012) (court must conduct *de novo* review of objections to magistrate judge's report and recommendation).  The district court may then "accept, reject, or modify the recommended disposition."  Fed. R. Civ. P. 72(b)(3).

Because the Report and Recommendation addresses Plaintiff's Motion for a Preliminary Injunction, the Court also sets forth the relevant standard for such relief.  A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest."  <u>League of Women Voters of United States v. Newby</u>, 838 F.3d 1, 6 (D.C. Cir. 2016) (<u>quoting Pursuing America's Greatness v. FEC</u>, 831 F.3d 500, 505 (D.C. Cir. 2016)).

Prior to the Supreme Court's decision in <u>Winter v. NRDC</u>, 555 U.S. 7 (2008), courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another.  <u>Davis v. PBGC</u>, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009); <u>see Davenport v. Int'l Bhd. of Teamsters</u>, 166 F.3d 356, 360-61 (D.C. Cir. 1999).  This Circuit has since suggested, though not held, that <u>Winter</u> — which overturned the Ninth Circuit's "possibility of irreparable harm" standard — establishes that "likelihood of irreparable harm" and "likelihood of success" are "'independent, free-standing requirement[s].'"  <u>Sherley v. Sebelius</u>, 644 F.3d 388, 392-93 (D.C. Cir. 2011) (quoting <u>Davis</u>, 571 F.3d at 1296

(Kavanaugh, J., concurring)). Unresolved, too, is the related question of "whether, in cases where the other three factors strongly favor issuing an injunction, a plaintiff need only raise a 'serious legal question' on the merits." Aamer v. Obama, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (citation omitted).

Regardless of these areas of uncertainty, however, courts in our Circuit have squarely held that a failure to show a likelihood of success on the merits alone is sufficient to defeat the motion. See Ark. Dairy Co-op Ass'n, Inc. v. USDA, 573 F.3d 815, 832 (D.C. Cir. 2009) (citing Apotex, Inc. v. FDA, 449 F.3d 1249, 1253-54 (D.C. Cir. 2006)). Conversely, a plaintiff's showing of likelihood of success does not end the inquiry; rather, "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." Davis, 571 F.3d at 1292.

## III. Analysis

Plaintiff raises four objections to the Magistrate Judge's denial of her Motion for a Preliminary Injunction. See Obj. at 1-2. She asserts that: (1) the Report and Recommendation "rested on fundamental misunderstandings of the facts and the contents of the administrative records"; (2) the Report erred by "suggest[ing] that the Court did not have the authority to grant the Preliminary Injunction"; (3) the Report failed to correctly conclude that "the IEP and placement provided to the student after the HOD was issued . . . was already proven unable to provide T.J. a FAPE at the" hearing; and (4) the Magistrate Judge failed to consider all factors for a preliminary injunction, including that Plaintiff is likely to prevail on the merits of her appeal from the HOD to this Court. Id. at 1-2, 25-27, 34.

The Court can quickly dispose of the second Objection – *i.e.*, the question of whether the Magistrate Judge erred in "suggesting" that the Court did not have the authority to order

emergency injunctive relief.  Plaintiff's parsing of her Report is, in this respect, off the mark. The Magistrate Judge simply "observe[d]" that Plaintiff had cited no authority for the proposition that injunctive relief in the form of a private-school placement could issue under IDEA "based solely upon the recommendation of a student's educational advocate."  R & R at 5. In doing so, the Report did not "suggest" that the Court lacked ultimate authority to grant injunctive relief under IDEA.  In any event, this Court is well aware that it has broad remedial authority under IDEA and discretion to grant "such relief as the court determines is appropriate" as guided by the goals of the Act.  See 20 U.S.C. § 1415(i)(2)(C)(iii).  Although the Act prohibits schools from altering a child's "then-current educational placement" during any review proceedings, id. § 1415(j), this "stay-put" provision "in no way purports to limit or pre-empt the authority conferred on courts."  Honig v. Doe, 484 U.S. 305, 326-27 (1988).  It follows, therefore, that if a party makes the requisite showing to obtain a preliminary injunction, the Court has authority to issue such relief.  See Q.C-C. v. D.C., 164 F. Supp. 3d 35, 46-47 (D.D.C. 2016) (Court's discretion to fashion equitable relief includes authority "to order prospective relief in the form of awarding placement at a private school").

    With respect to Plaintiff's remaining objections, the Court concludes that the futility of her final contention – that she can demonstrate a likelihood of success on appeal – is dispositive of her Motion.  The Court, consequently, need not review the Report's discussion of irreparable harm.  It notes, moreover, that Plaintiff's first and third objections are intertwined with the merits issue, as the question of whether Adams can prevail here rests in part upon "the facts and the contents of the administrative records" and an analysis of the Hearing Officer's decision to order an IEP review and revision.  Before proceeding to the merits, the Court will first set forth some of IDEA's basic principles.

A. <u>Framework of IDEA</u>

The purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). As a condition of receiving federal funding, IDEA requires school districts to adopt procedures to ensure appropriate educational placement of disabled students. <u>See</u> 20 U.S.C. § 1413. A student's eligibility for a FAPE under IDEA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" or "individualized education program team." § 1414. Such a team consists of the parents and teachers of the disabled student, as well as other educational specialists, who meet and confer in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE. <u>See</u> § 1414(d)(1)(B).

School districts must also develop a comprehensive plan, known as an individualized education program (IEP), for meeting the special-education needs of each disabled student. <u>See</u> § 1414(d)(2)(A). The IEP must be formulated in accordance with the terms of IDEA, and "[t]o meet [this] substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." <u>Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.</u>, 137 S.Ct. 988, 999 (2017). "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." <u>Reid ex rel. Reid v. District of Columbia</u>, 401 F.3d 516, 519 (D.C. Cir. 2005) (citation and alterations omitted).

IDEA requires that children with disabilities be placed in the "least restrictive environment" (LRE) so that they can be educated in an integrated setting with children who are not disabled to the maximum extent appropriate. <u>See</u> § 1412(a)(5)(A). IDEA also guarantees

parents of disabled children the opportunity to participate in the evaluation and placement

process. <u>See</u> §§ 1414(f), 1415(b)(1). Parents who object to their child's "identification,

evaluation, or educational placement" are entitled to an impartial due-process hearing, <u>see</u>

§§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel" and

a "right to present evidence and confront, cross-examine, and compel the attendance of

witnesses." § 1415(h). A qualified, impartial hearing officer conducts the due-process hearing

in accordance with the Act. <u>See</u> 5 D.C. Mun. Regs. § 3030.1.

Parents "aggrieved by" a hearing officer's findings and decision may bring a civil action

in either state or federal court. <u>See</u> § 1415(i)(2); 5 D.C. Mun. Regs. § 3031.5. In a review of a

Hearing Officer Decision (HOD), the burden of proof is always on the party challenging the

administrative determination, who must "'at least take on the burden of persuading the court that

the hearing officer was wrong, and . . . a court upsetting the officer's decision must at least

explain its basis for doing so.'" <u>Reid</u>, 401 F.3d at 521 (quoting <u>Kerkam v. McKenzie</u>, 862 F.2d

884, 887 (D.C. Cir. 1989)). In assessing the determination of the hearing officer, moreover, the

district court does not exercise unfettered *de novo* review. <u>See</u> <u>Rowley</u>, 458 U.S. at 206 ("Thus

the provision that a reviewing court base its decision on the 'preponderance of the evidence' is

by no means an invitation to the courts to substitute their own notions of sound educational

policy for those of the school authorities which they review."). Courts must give administrative

proceedings "due weight," <u>id.</u>, and "'[f]actual findings from the administrative proceedings are

to be considered prima facie correct.'" <u>Roark ex rel. Roark v. District of Columbia</u>, 460 F. Supp.

2d 32, 38 (D.D.C. 2006) (alteration in original) (quoting <u>S.H. v. State-Operated Sch. Dist. of the</u>

<u>City of Newark</u>, 336 F.3d 260, 270 (3d Cir. 2003)). The statute, however, also suggests "less

deference than is conventional in administrative proceedings," <u>Reid</u>, 401 F.3d at 521, since the

district court is allowed to hear additional evidence at the request of the party.  See §
1415(i)(2)(C)(ii).

B.  Likelihood of Success on the Merits

To prevail here, Adams must demonstrate her likelihood of success on at least one count
of her underlying Complaint.  See Winter, 555 U.S. at 20; League of Women Voters, 838 F.3d at
6.  To remind the reader, the four causes of action allege that the Hearing Officer erred by: 1) not
"ruling separately on the placement claim"; (2) invalidating the March 2017 IEP on procedural
grounds and "failing to consider any of the substantive allegations made by the parent"; (3)
failing to address Plaintiff's assertion that delegation to the LRE team impeded Adams's
participation in the placement decision; and (4) finding that Plaintiff did not meet her burden of
proving that there was no appropriate public-school option.  See Compl., ¶¶ 101-139.  The Court
looks at each separately.

1.  *Educational Placement*

Plaintiff first asserts that the Hearing Officer erred in "not ruling separately" on her
allegation that DCPS denied T.J. a FAPE by providing him with an inappropriate educational
placement from September 10, 2015, to the time of the administrative hearing.  See Compl., ¶¶
102-104.  Officer Vaden found that "there [was] no need to address the appropriateness of the
placements [for 2016 and 2017] as a separate issue" because he had set aside the corresponding
IEPs, and the adequacy of T.J.'s 2015 IEP and placement was "not at issue in this case."  Interim
HOD at 30.  She contends that, in reaching these conclusions, the Hearing Officer "avoided
making any findings of fact relevant to the student's needs to guide the development of the . . .
educational placement."  Compl., ¶ 106.  This error, Adams alleges, precluded findings of fact
showing that T.J. cannot be provided for in a public-school setting.  She therefore contends that

if she were to prevail on this placement claim on appeal, such a finding would support injunctive relief placing T.J. at the Phillips School. See Mot. for PI at 14. Finally, Plaintiff asserts that the Hearing Officer's dismissal "of the placement issue as a separate issue . . . left the student without a timely decision, as required under IDEA, regarding his allegation that DCPS had failed to offer him an appropriate placement." Compl., ¶ 109.

DCPS responds that Adams's placement claim cannot prevail, as (1) any challenge to the 2015 placement is time barred; (2) the Hearing Officer already invalidated the March 2016 and March 2017 IEPs; (3) the alleged deficiencies in T.J.'s prior placements do not support injunctive relief enrolling him in a private school; and (4) the HOD rendered a timely decision regarding the placement claim. See Opp. to PI at 7-8. Defendant hits the mark on all four.

First, with respect to the 2015 placement claim, the Court agrees that Plaintiff's challenge is untimely. As Adams admits, the statute of limitations for challenging T.J.'s April 30, 2015, IEP and his resulting placement in September had run by the time she filed her Due Process Complaint. See Mot. for PI at 15; 20 USC § 1415(f)(3)(c). The Hearing Officer therefore had before him only the two more recent placements – those implementing the March 2016 and March 2017 IEPs. In light of the clear time bar, Plaintiff cannot now shoehorn a challenge to the 2015 placement into her current claims.

Second, by setting aside the 2016 and 2017 IEPs, the Hearing Officer rendered irrelevant any separate analysis of T.J.'s placements during those years. IDEA directs that a student's placement be "based on the child's IEP." 34 C.F.R. § 300.116(b)(2). Having determined that the 2016 and 2017 IEPs were fatally flawed, Officer Vaden had no need to further examine the placements arising from those now-defunct documents. Instead, he correctly concluded that his

findings "encompass the educational placements determined by the respective IEP teams." Interim HOD at 30.

Third, Adams is unlikely to prevail on her assertion that the Hearing Officer violated IDEA by leaving T.J. "without a timely decision" on the placement claim. She states in her Complaint that the "parent still ha[d] no decision on the placement issue, despite properly raising it" at the administrative hearing. See Compl., ¶ 109. Yet this is a misinterpretation of the HOD's conclusions of law. The Hearing Officer did in fact address T.J.'s 2016 and 2017 placements when he found that his invalidation of T.J.'s IEPs for those year "encompass[ed]" the corresponding placements. Adams therefore got a decision on the placement issue – albeit one based on the Hearing Officer's conclusions regarding the 2016 and 2017 IEPs. Plaintiff's preference that Officer Vaden had instead made "specific findings" on and separately addressed T.J.'s past placements does not mean that she recieved "no decision" at all. Indeed, when an HOD finds an IDEA violation, "[w]hether the Hearing Officer based such a finding on one, or two, or three alleged violations is irrelevant – the result would be the same." Green v. D.C., 2006 WL 1193866, at *9 (D.D.C. May 2, 2006).

Finally, the Court finds that Adams is unable to show how prevailing on this past-placement claim would support an injunction placing T.J. in a private school. Plaintiff suggests that a favorable decision on this count would have "proven that [he] should have been placed at Phillips." Reply at 9-10. Yet this assertion does not account for the fact that, unlike compensatory education, prospective placements address whether a child's current needs and IEP can be met in a public-school setting. See Branham v. Gov't of D.C., 427 F.3d 7, 11 (D.C. Cir. 2005) (an award of private-school placement is not retrospective relief designed to compensate for yesterday's IDEA violations, but rather "prospective relief aimed at ensuring that

the child receives <u>tomorrow</u> the education required by IDEA").  Even if the Hearing Officer had found that T.J. was inappropriately placed from September 10, 2015, to the time of the Due Process Complaint, such a determination would not resolve the question of T.J.'s appropriate <u>future</u> placement.  The Court thus concludes that this count is neither likely to succeed nor able to support the remedy Adams now seeks – an order prospectively placing T.J. at the Phillips School.

### 2.  *March 16, 2017, IEP*

Plaintiff next alleges that the Hearing Officer erred when he invalidated T.J.'s March 2017 IEP "on procedural grounds" rather than "consider[ing] any of the substantive allegations made by the parent."  Compl., ¶¶ 112, 114.  She asserts that this error relates to the instant request for injunctive relief, as a resolution of the substantive concerns was "necessary to make a placement determination," including the question of whether T.J. should be prospectively placed at a private school.  Id., ¶ 116.  DCPS rejoins that this Count is "moot," as Officer Vaden ultimately invalidated the March 2017 IEP, and "the educational harm caused by [it] has already been compensated."  Opp. to PI at 7.

Once more, the Court agrees.  Although Adams may have preferred that Officer Vaden had discussed the alleged substantive shortcomings of T.J.'s 2017 IEP, such an exegesis was unnecessary.  Instead, having found a procedural ground upon which to set aside the March 2017 IEP, the Hearing Officer was not required to address Plaintiff's allegations regarding the <u>content</u> of that Plan.  <u>See</u> <u>Green</u>, 2006 WL 1193866, at *9 (rejecting Plaintiff's contention that Hearing Officer should have provided "greater 'guidance'" when making his determination and granting Plaintiff's requested relief as "emblematic of a classic request for an advisory opinion").

The Court notes, moreover, that Adams is again unable to demonstrate how the violations alleged in Count II support a preliminary injunction placing T.J. at the Phillips School. As discussed above, compensatory education is the proper remedy for past deprivations of educational opportunity, and that is the relief the Hearing Officer ordered in the Final HOD. See Final HOD at 6. In short, the March 2017 IEP has been invalidated and T.J.'s deprivations during the period of its effect appropriately compensated. Whatever substantive deficiencies Plaintiff may have alleged at the Due Process Hearing, such claims do not now give her a likelihood of success on the merits or a basis for prospective injunctive relief.

### 3. *Delegation to LRE Team*

Plaintiff's third count alleges that DCPS "denied [T.J.] a FAPE in March of 2017 by delegating the placement decision to a team that did not include the parents or those knowledgeable about the decision." Compl., ¶ 118. Specifically, Adams asserts that the District violated IDEA's directive that "the parents of each child with a disability [be] members of any group that makes decisions on the educational placement of their child," 20 U.S.C. § 1414(e); 34 C.F.R. § 300.327, when DCPS allowed its "LRE team" to determine the appropriate placement to implement T.J.'s March 2017 IEP. She therefore contends that the Hearing Officer erred when he concluded that "[t]urning to DCPS to identify [a] school capable of implementing the IEP was not a denial of FAPE." Compl., ¶ 118 (quoting Interim HOD at 29). The District responds to this count as it does to the one above, arguing that because Officer Vaden invalidated the March 2017 IEP, any further challenges to the Plan's implementation are now moot. See Opp. to PI at 7.

For the same reason as just discussed, the Court finds it unlikely that Plaintiff will prevail on this claim. Whatever the merits of the Hearing Officer's finding that the District

appropriately used its LRE team to implement the March 2017 IEP, the fact remains that he

invalidated the 2017 plan *in toto*. See Green., 2006 WL 1193866, at *9 (finding that plaintiff's

argument that Hearing Officer made "five factual mistakes" unavailing given that HOD found

deprivation of FAPE and granted relief).  As another court held in rejecting an IDEA plaintiff's

claim that the "Hearing Officer . . . erred in not finding more violations of FAPE by DCPS,"

what "is critical" is not the number of ways in which that conclusion could be reached, but

simply "the fact that the Hearing Officer found that DCPS had denied [Student] a FAPE."  Id.

Here, the hearing officer made just such a determination with respect to the March 2017 IEP.

See Final HOD at 3-4.  Plaintiff therefore does not have a likelihood of success on the merits on

her claim that he should have found yet more ways in which the Plan or its implementation

violated IDEA.

### 4.  *Prospective Placement*

The Court turns, finally, to the heart of Plaintiff's request for emergency injunctive relief

– her allegation that the Hearing Officer improperly declined to prospectively place T.J. at the

Phillips School.  Adams makes a plethora of claims under this count, which the Court will, for

clarity's sake, condense into four substantive allegations.  Specifically, she asserts that Officer

Vaden erred by: (1) "fail[ing] to order any substantive relief" and instead impermissibly

directing the parties to hold a new IEP meeting; (2) "failing to consider the proposed placement

by DCPS and the evidence submitted by [Plaintiff] rebutting" the adequacy of a 20-hour IEP and

placement in the BES program; (3) finding that Plaintiff did not "prove that there was no

appropriate [public] school option" that would be  "the student's LRE"; and (4)  "blaming

[Plaintiff's] counsel" for failing to agree to a meeting discussing the 20-hour/BES IEP.  See

Compl., ¶¶ 125-27, 134.  Unsurprisingly, DCPS disputes all of these contentions, maintaining

that the HOD correctly determined that the appropriate relief in this case was an IEP review and revision, rather than prospective placement at the Phillips School.  See Opp. at 9-10.

        a.   Substantive Relief

In considering whether the hearing officer denied "substantive relief," the Court first concludes that Adams is unlikely to prevail in showing that the remedy ordered here – a review and revision of the IEP to comply with the HOD's findings of fact and conclusions of law – was error.  Because Officer Vaden made "reasoned and specific findings" regarding T.J.'s disabilities and past IEPs, this Court gives "due weight" to his conclusions and "exercise of discretion" in determining appropriate relief for the FAPE violations identified in the HOD.  See Turner v. D.C., 952 F. Supp. 2d 31, 35–36 (D.D.C. 2013).  This includes his finding that the directives of IDEA would be best effectuated by ordering an IEP review and revision, rather than prospective placement in a private school.  See Lopez-Young v. D.C., 211 F. Supp. 3d 42, 57 (D.D.C. 2016) (noting that "Hearing Officer has broad discretion to fashion a remedy").

As the Court discusses in greater depth below, this remedy was a reasonable reflection of the issues before the Hearing Officer and the administrative record.  It appears, moreover, that such relief is not unusual in IDEA cases, including those in which the plaintiff requests private-school placement.  See, e.g., Pinto v. D.C., 938 F. Supp. 2d 25, 28 (D.D.C. 2013) (noting that Hearing Officer determined that DCPS had developed inappropriate IEP, but declined to grant placement at private school and instead ordered District to "convene a meeting to revise [the] IEP as appropriate within 30 days of a written request by Plaintiffs"); Mary Struble v. Fallbrook Union High Sch. Dist., 2011 WL 291217, at *7-8 (S.D. Cal. Jan. 27, 2011) (rejecting argument that ALJ erred by "ordering the parties to meet again and develop a new IEP . . . rather than

ordering a placement").  The Court therefore finds that Adams is not likely to prevail on her

claim that Officer Vaden erroneously denied "substantive relief."

The Court notes, moreover, that Plaintiff's own Due Process Complaint listed a new IEP

meeting as an alternative to prospective placement.  Among her remedies, Adams requested "an

Order that DCPS hold a meeting within 15 days of a decision in this matter to revise the IEP to

comply with the hearing officer's findings of fact and conclusions of law."  Due Process

Complaint at 14.  The Interim HOD granted, almost verbatim, this relief.  See Interim HOD at

34.  Plaintiff cannot now maintain that this conclusion was out of bounds.

### b.  Adequacy of 20-hour IEP

As to the second issue, the HOD determined that whether the 20-hour/BES plan "would

be reasonably calculated for [T.J.] to make educational progress [was] not an issue in this case,"

and it thus "ma[de] no finding as to the appropriateness of the propos[al]."  Interim HOD at 28-

29.  Plaintiff asserts that this was error.  She claims that Officer Vaden should have instead

considered the merits of the 20-hour plan, in part because it was established during the hearing

that the parties disagreed as to whether this IEP would provide a FAPE.

The law is clear that the scope of an IDEA hearing extends only to those issues raised in

the Due Process Complaint, and that matters not presented to the Hearing Officer are not

administratively exhausted for the purposes of district-court review.  See Damarcus S. v. D.C.,

190 F. Supp. 3d 35, 55 (D.D.C. 2016) ("Plaintiffs are prohibited from "rais[ing] issues . . . that

were not raised in the due process complaint") (citing 34 C.F.R. § 300.511(d)) (alteration in

original); S.S. by & through St. v. D.C., 68 F. Supp. 3d 1, 19 (D.D.C. 2014) (issue not certified

in prehearing order and arising after HOD "presents an entirely new issue which must first be

raised in an IDEA administrative complaint"); Douglass v. D.C., 605 F. Supp. 2d 156, 165

(D.D.C. 2009) ("[A]bsent a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the [IDEA] before seeking judicial review under the Act.") (alteration in original) (quoting Cox v. Jenkins, 878 F.2d 414, 419 (D.C. Cir. 1989)). Here, although the BES program was discussed during the hearing (and was, in fact, implemented in the subsequent IEP meeting), the 20-hour/BES IEP was not before the Hearing Officer. See Prehearing Order. Indeed, it could not be, as it was only finalized after the Due Process Complaint had been filed. See Final HOD at 13. The Court therefore finds that Plaintiff is unlikely to show that her challenge to the 20-hour plan was before the Hearing Officer and properly exhausted below. See G.G. ex rel. Gersten v. D.C., 924 F. Supp. 2d 273, 282 (D.D.C. 2013) (holding that "[t]o the extent that the [Plaintiffs are] dissatisfied with the District's proposed placement, they must bring a new and separate action"); Morgan v. Greenbrier Cty. W. Va. Bd. of Educ., 83 F. App'x 566, 568 (4th Cir. 2003) (affirming order of new IEP meeting after finding IDEA violations, and holding that Court did not "have before us the issue of the appropriateness of any IEP that was developed or any actions taken after the due process hearing").

The Court similarly finds little merit to Plaintiff's assertion that the Hearing Officer should have considered the 20-hour/BES program because "the parties [had] already determined that they disagree[d] about the student's current needs." Compl., ¶ 139; see Mot. for PI at 34-35 (asserting that Hearing Officer should have addressed 20-hour program because "the parent made it clear that the [IEP] was not acceptable to her"). Adams seems to contend that, regardless of the fact that the IEP was not in place at the time of the hearing, Officer Vaden should nonetheless have addressed the parties' dispute over its adequacy and assessed its merits. She claims that he failed to recognize that the parties "fundamentally disagreed" about the BES

program and therefore "wasted judicial resources" by requiring them to, once again, discuss T.J.'s appropriate placement. Yet, in addition to its exhaustion defect, this claim finds no footing in the Hearing Officer's treatment of the 20-hour/BES IEP. Although the HOD did not address the "appropriateness of the proposed placement," Officer Vaden did not turn a blind eye to the fact that the parties might well disagree as to the adequacy of the IEP arising from his Order. In light of Plaintiff's concern that the District would go no further than again offering the 20-hour/BES IEP, the Hearing Officer explicitly provided her the option of amending her Due Process Complaint to address disputes arising from the revised IEP. See ECF 7-4 (Order on Motion for Reconsideration).

In doing so, Officer Vaden provided Plaintiff a path to expediently challenge the IEP developed after the HOD, rather than "having to file a new due process proceeding [that] may delay the ultimate resolution of this case and result in duplicative evidence." Id.; see Final HOD at 2, 4 (noting that Hearing Officer "ordered that the Interim HOD be amended to provide that before the final decision in this case was issued, Petitioner would be allowed to file a request to amend her Due Process Complaint, should she disagree with the decisions made by the Student's IEP team convened pursuant to the original order in the Interim HOD"). Indeed, the Hearing Officer's decision denying Plaintiff's request to place T.J. in a private school was explicitly "without prejudice" and "pending completion of the review and revision of Student's IEP." Order on Mot. for Reconsideration at 3. It is clear that, although he concluded that the 20-hour/BES IEP was not at issue during the hearing, Officer Vaden left the door well ajar for Adams to contest the adequacy of such a program. Yet Plaintiff did not seek to amend her Due Process Complaint, instead appealing the Interim HOD to the District Court. See Final HOD at

2; AR 1052 (noting that Adams did not seek leave to amend). It is not this Court that should parse these unexhausted claims.

### c. No Public-School Option

The Court turns next to Plaintiff's assertion that the record developed at the administrative hearing was sufficient to show that T.J. had no suitable public-school option. See Compl., ¶ 134. The HOD stated that it was "premature to conclude that DCPS cannot make a suitable placement available," Interim HOD at 31, a conclusion that Adams contends is unsupported by the record. Yet a review of the filings and transcript in this case shows otherwise. Although there was substantial testimony regarding the specifics of the BES program and the Phillips School, the hearing was by no means limited to considering these two options. Rather, the Hearing Officer also heard more general testimony regarding DCPS's asserted capacity to provide for T.J.'s educational needs and offer an LRE placement. See Tr. 64:1-8 (discussing benefit to T.J. from having opportunity to interact with non-disabled peers); 103:18-104:10 (discussing reading support available in general-education electives); 109:20-110:6 (discussing participation in electives); 137:21-138:20 (discussing available reading-support programs in DCPS); 243:3-12, 246:7-18 (discussing ability of New Kramer Middle School to provide up to 30 hours specialized instruction outside general education and over 240 minutes behavior-support services); 245:1-20 (discussing accommodations that can be made for students in DCPS restrictive environments).

"[A] Hearing Officer's authority is flexible and case-specific," and, in light of these discussions regarding the various DCPS services and supports, Officer Vaden appropriately declined to order prospective placement in a private school. Lopez-Young v. D.C., 211 F. Supp. 3d 42, 57 (D.D.C. 2016). He instead directed the District to review and revise T.J.'s IEP, "in

order to make an informed decision about his ongoing placement." Interim HOD at 31. This remedy was supported by the record and was a reasonable conclusion in light of the fact that "D.C. statutes and regulations permit DCPS to place and fund a student at a school outside the District only if there is no appropriate public, charter or private school program within the District." Roark ex rel. Roark v. D.C., 460 F. Supp. 2d 32, 44 n.11 (D.D.C. 2006); see D.C. Code § 38-2561.02 (providing that placement decision made in order of : (i) DCPS schools or charter schools; (ii) private or residential facilities in District; and (iii) facilities outside District). The Court concludes that Adams is therefore unlikely to succeed in demonstrating that the HOD erred in not finding that the Phillips School was T.J.'s LRE. See Morgan, 83 F. App'x at 568 (holding that "with respect to the Morgans' request that [Student] be placed forthwith at an out-of-state residential school, the officer concluded that such a placement was not justified, and to order such a placement without pursuing a revised IEP would ignore the Act's requirement that, to the greatest extent possible, children are to be educated in the least restrictive environment."); R.G. v. New York City Dep't of Educ., 980 F. Supp. 2d 345, 364-65 (E.D.N.Y. 2013) (finding that "appropriate remedy" for IDEA violation was requiring Defendant to "develop a new IEP" in order to "fully and fairly consider[] whether a general education environment, with appropriate support, can provide [Student] with an education likely to produce progress, not regression").

d. Role of Plaintiff's Counsel

Finally, the Court briefly addresses the claim that Officer Vaden improperly found that Plaintiff's counsel "refus[ed] to hold an IEP meeting" after filing her Due Process Complaint. As part of the resolution process preceding the administrative hearing, the District proposed holding an IEP meeting to discuss the 20-hour/BES program. Counsel did not agree, and the

Hearing Officer found that she therefore prevented T.J.'s IEP team from "hav[ing] the opportunity to consider and decide whether the proposed [20-hour/BES plan] would be appropriate." Interim HOD at 31. Counsel asserts that she refused the meeting because the proposed IEP was sent "only three calendar days in advance of the meeting," Opp. at 10, while DCPS contends and the HOD concludes that she did so because she was mistaken as to the effect of IDEA's stay-put provision. See ECF No. 7-6 (Respondent's Exhibits) at 5. Yet, whatever the reasons for counsel's refusal, they do not alter the validity of the Hearing Officer's ultimate conclusion that, at the point of the administrative hearing, T.J.'s educational team had not reviewed the 20-hour/BES IEP. While counsel may (or may not) be correct that she was not responsible for stonewalling the proposed meeting, the fact remains that T.J.'s IEP team never discussed or finalized this plan. Any error in the HOD's analysis of counsel's actions therefore does not vitiate the Court's conclusion that the 20-hour/BES IEP was not administratively exhausted below.

As another court here has stated, "[T]he consideration of prospective placement is frustrated without an IEP and an accompanying determined placement." G.G. ex rel. Gersten v. D.C., 924 F. Supp. 2d 273, 282 (D.D.C. 2013) (citing Eley v. D.C., 2012 WL 3656471, at *11 (D.D.C. Aug. 24, 2012)); see Lofton v. D.C., 7 F. Supp. 3d 117, 123 (D.D.C. 2013) (noting that "the primary tool for ensuring that the student is provided a FAPE is the child's IEP" and that "once the IEP is developed, the school system must provide an appropriate placement that meets those needs") (emphasis added). Even when a Hearing Officer finds "an actionable violation of the IDEA," courts have therefore upheld an HOD ordering the parties to "convene an . . . IEP meeting within ten days of [the decision]" so that prospective placement would "not be addressed by this Court, but instead, by the IEP team, as soon as practicable." Id. This was the

route chosen by the Hearing Officer in this case, and the reasonableness of such a remedy is supported by the record below. Rather than prognosticating about the merits of the BES/20-hour program or ordering a specific prospective placement, Officer Vaden instead directed the parties to attempt to address T.J.'s needs through a new IEP review and revision. Such relief comports with the collaborative, team-based process envisioned under IDEA as the best way of pursuing the "fact-intensive exercise" of "crafting an appropriate program of education" for students with disabilities. See Endrew F., 137 S. Ct. at 999. The Court therefore concludes that Plaintiff is unlikely to prevail on her prospective-placement claims.

## IV.  Conclusion

Because Plaintiff is unable to demonstrate a likelihood of success on any of her counts, the Court need go no further in denying her Motion. See Arkansas Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agr., 573 F.3d 815, 832 (D.C. Cir. 2009) (court need not address "the other three preliminary injunction factors" when there is no likelihood of success on the merits). Yet it is not without sympathy for the difficult circumstances of Plaintiff and her son. The record makes clear that T.J. has faced significant educational and behavioral challenges, and DCPS does not contest that he requires special education and extensive support. In light of these needs, and the concerns raised by Plaintiff regarding T.J.'s performance at his current placement, the Court trusts that all sides will strive for an efficient and equitable result. Although this Opinion concludes that Adams does not have a likelihood of success on her underlying claims, this determination does not minimize DCPS's ongoing obligation to provide T.J. with educational opportunities that are "reasonably calculated to enable [him] to make progress" in light of his circumstances. Endrew F., 137 S. Ct. at 1001. The law requires as much, and surely all parties can agree that this child deserves no less.

For the reasons stated herein, the Court will issue a contemporaneous Order accepting the Recommendation of the Magistrate Judge to deny Plaintiff's Motion.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: January 29, 2018